1

**GEOFFREY A. BRAUN**
**Bar #46562**

2

**181 Devine St.**
**San Jose, CA 95110**

3

**(408) 288-9512**

4

Attorney for Defendant
Kim Mai

5

6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

7

8

UNITED STATES OF AMERICA,                    ) No. CR 07-00289 RMW
                                             )
9

        Plaintiff,                           ) MEMORANDUM OF POINTS AND
                                             ) AUTHORITIES IN SUPPORT OF
10

    vs.                                      ) MOTION TO SUPPRESS EVIDENCE
                                             ) GAINED FROM WIRE INTER-
11

NAM NGUYEN, KIM MAI, et al.,                 ) CEPTION ORDER
                                             )
12

        Defendants.                          )
                                             )
13

_____    )

14

I.    **INTRODUCTION**:

15

      Most citizens of our democratic republic view with justifiable suspicion and concern the

16

power of the government to intrude surreptitiously into their homes, their offices, and their lives

17

by means of secret wiretapped interception of private telephone calls.  Recognizing, however,

18

that in some fairly extreme and limited circumstances judicially authorized wiretapping may be

19

necessary to disrupt and put an end to organized criminal operations, Congress in 1968 granted to

20

federal law enforcement authorities the right to seek wiretaps in specifically defined and limited

21

situations. (18 U.S.C. 2510–2522)  Since the enactment of that statute the Ninth Circuit Court of

22

Appeals has been justifiably solicitous of the privacy rights enshrined in our Constitution and in

23

the "necessity" provisions of the wiretap statutes, and it has balanced the occasional necessity of

wire interceptions against the rights of the citizenry to be free of surreptitious intrusions into their

24

privacy.

25

      Specifically the statute requires that before a wiretap application may be granted the

26

government must persuade the District Court that other investigative procedures have been tried

and failed or that they reasonably appear to be unlikely to succeed if tried, or to be too dangerous

27

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

28

[18 U.S.C. §2518©)].  In other words, the use of wiretaps in ordinary criminal investigations is designed to be the exception, not the norm.  As stated by the 9th Circuit, "The necessity requirement "exists in order to limit the use of wiretaps, which are highly intrusive".  (United States v. Blackmon 273 F.3d 1204, 1207 (9th Cir. 2001), citing United States v. Bennett 219 F.3d 1117, 1121 (9th Cir. 2000))

In this fairly typical drug case, involving dealers selling ecstasy (MDMA) to other dealers and users, the government secured a wiretap order on September 5, 2006, relying upon a 67 page affidavit which explained *ad infinitum* why every investigative technique known to man since the dawn of civilization would necessarily fail, or be too dangerous, while yet making almost no reference to the particular facts of this case.  If the government's generic affidavit is to be taken at face value, then there can be no drug-selling case, no matter how small and insignificant or how large and extensive, in which a wiretap order is not appropriate.  In other words, if this affidavit is sufficient to justify a wiretap order, then the necessity restrictions of section 2518©) are completely meaningless and there is no limitation on the government's ability to obtain wiretaps in every drug investigation, and indeed, in every criminal investigation of any kind.  This cannot be the law, and it is not.

**FACTS:**

Defendant KIM MAI is one of six defendants in two related indictments.  (Only defendant Huy Ngo is named in both indictments.)  In CR-07-00289 she is charged in Count 3, only, with a violation of 21 U.S.C. §843(b) (use of a telephone to facilitate drug trafficking) on or about September 23, 2006.  Co-defendant Nam Nguyen is charged in the same indictment with possession with intent to distribute MDMA and together with codefendants Jimmy Nguyen and Huy Ngo, is also charged with conspiracy to distribute MDMA.  The telephone count against defendant Kim Mai arose from a single telephone call she made to defendant Nam Nguyen on September 23, 2006, which call was intercepted pursuant to a wire interception order on Nam Nguyen's cellular telephone [(408)-314-6063] signed by Hon. Jeremy Fogel on September 5, 2006.

The government obtained the wire interception order after presenting an application

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

2

signed by Assistant United States Attorney, Susan Jerich.  That application in turn relied upon the affidavit of the principal investigator, D.E.A. Agent Sammy Parks.  The facts set forth in Agent Parks' affidavit are these:

Qualifications of Agent Parks

Agent Parks has been a D.E.A. agent since 2004, having previously been employed by the Galveston, Tex. Police Dept. for 8 years, and has the requisite training and experience to know whereof he speaks.  (Parks Affidavit, attached as Exhibit "A" to S. Jerich Application, dated September 5, 2008,  pages 1:22 – 3:24, found on Government discovery disc, Bates page 69.  Additional references to the affidavit will be shown in the form (P.A. 1:22).  The Bates page on the discovery disc may be derived by adding 68 to the affidavit page.)

The San Diego County D.E.A. Investigation

Agent Parks is aware of an MDMA (ecstasy) distribution investigation being conducted by D.E.A. agents in San Diego County, California.  In the course of that investigation the government obtained and renewed wire interception orders on suspects Linh Nguyen and Chi Bui on Nov. 28, 2005, Jan. 10, 2006, Feb. 10, 2006, and March 23, 2006. (P.A. 10:19)  Pursuant to the wiretap on Chi Bui, agents overheard a call to Bui on December 2, 2005 by a user of telephone number 408-314-6063.  That telephone is listed to defendant Kim Mai, but is consistently used by a male caller whom agents have identified as defendant Nam Nguyen.  In the course of the December 2d call,  Nam discussed with Chi Bui methods of selling ecstasy.  On May 18, 2006 Nam was intercepted calling Linh Nguyen (his brother) and discussing sales of ecstasy and marijuana.  Both Nam and Linh have prior convictions for robbery and Linh has a 2003 arrest for distribution of ecstasy.  Agents have concluded that Chi Bui is a significant distributor of ecstasy in San Diego and that he gets his product from San Jose.  By the use of a cooperating witness, agents have so far purchased a total of 6 boats (1 boat = 1000 hits) from Chi Bui.  Agents are aware of hundreds of telephone contacts between Nam Nguyen and Linh Nguyen and have also concluded that Nam is the source of supply of ecstasy to Linh Nguyen and other unidentified sellers. (P.A. 8:8 – 11:10, 16:16).  Agents eventually arrested Linh after he sold 3 boats of ecstasy to an undercover agent in March 2006. (P.A. 33:1)

Agents are aware of another significant ecstasy seller in Orange County named David

Bailey (an aka for a Vietnamese suspect) and have intercepted calls from him pursuant to a wire interception order on his telephone (619-245-5552). (P.A. 12:13, 15:3-14))  Starting about March 23, 2006 Agents intercepted numerous calls from Bailey to Linh Nguyen in which they discussed past and future ecstasy sales by Linh to Bailey.  In one of these conversations (on March 24, 2006) Linh told Bailey that he had recently flown to San Jose where he picked up 5 boats from a source (whom the Agents believe is Nam Nguyen) and then returned to San Diego with the ecstasy in a rental car.  Significantly, Bailey then called Mike Galavan, a person whom the agents know to be a District Attorney Investigator for the Riverside County District Attorney's Office, and informed him of all the incriminating information he had on Linh Nguyen, including Linh's recent trip to San Jose to purchase the 5 boats of ecstasy.  The D.E.A. agents indicate they are aware of Bailey's history as an informant, but apparently do not contact D.A. Investigator Galavan to let him know that they are listening to his conversations with his informant, Bailey, or that they know that Bailey is withholding information about his own active ecstasy distribution activities from Galavan. (P.A. 22:23 – 28:2)

On May 18, 2006 agents recorded a conversation on the Linh Nguyen tap from Nam Nguyen in San Jose.  Nam and Linh talked about quality and price for marijuana and for two different "brands" of ecstasy.  Nam indicated he has a new release to deal. (P.A. 29:1 – 30:28)

Investigation of Nam Nguyen in San Jose Prior to Sept. 5, 2006

Agent Parks and other D.E.A. agents in San Jose are brought into the case no later than April 11, 2006.  They soon locate Nam's townhouse at 2841 Agua Vista Drive in San Jose and follow him to his place of work (a furniture store on El Camino, in Santa Clara).  On May 2d the agents begin surveillance of the townhouse, which they conduct intermittently (and only for a few hours when they do it) on that date, May 19th, May 26th, May 31st, June 6th, June 12th, June 16th, July 12th, August 1st, and August 9th.  They identify the car Nam drives and record the license plate number.  By the use of a ruse telephone call to Nam while they are following him, they confirm his cell phone number as 408-314-6063. (P.A. 31: 1-28)  Except for the surveillance on June 12th, the daytime surveillances at Nam's house only tend to show that other people live at the home with him.  No surveillance of Nam at his work site appears to have been conducted

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

4

1   other than on two occasions when agents followed Nam from his home to his job site.

2          The June 12th surveillance did reveal some information.  On that date agents followed

3   Nam from his home to the Thoa café on McLaughlin Ave. (Note, there is no indication the agents

4   attempted to determine if he met anyone there or who those persons might be; however after the

5   wire interception order complained of in this motion was obtained on September 5, 2006, agents

6   followed Nam to that same café on numerous occasions and observed him meeting with co-

7   defendants Huy Ngo and Jimmy Nguyen.)  Agents then observed Nam drive to another residence,

8   leave his vehicle there, and drive off in a white Lexus.  (Although the agents noted the address

9   and the license plate number on the Lexus, there is no indication they conducted any further

10  investigation on the residence, its occupants, or the vehicle.)  Nam then drove to Gilroy and

11  entered a business believed to be a Mexican meat market.  (There is no indication the agents

12  attempted to learn what business, if any, he had conducted there, why he had gone there, or who

13  he had seen.)  Thereafter Nam returned to San Jose and entered a Wells Fargo Bank branch at the

14  Capitol Square Mall.  He then proceeded to the Grand Century Mall where he appeared to go into

15  the United Commercial Bank. (There is no indication that the agents attempted to learn if Nam or

16  his wife, defendant Kim Mai, had accounts at either of these bank branches.  At a later point in

17  the affidavit where Agent Parks discusses why grand jury subpoenas have not been used he states

18  that the agents have not determined where Nam Nguyen does his banking.  P.A. 55:21)

19  Thereafter Nam drove to work and the surveillance was terminated. (P.A. 43:24 – 45:6)

20         On May 22, 2006 pursuant to a court order, agents set up a pen register and trap-and-trace

21  surveillance on Nam's cellular telephone.  The pen register was renewed on July 17th.  Agents

22  also subpoenaed Verizon telephone records on Nam's cell phone.  From the pen register and

23  trap-and-trace devices, agents learned that between May 20, 2006 and August 16, 2006, there had

24  been 212 calls between Nam's telephone and Linh's telephone.  They also discovered that Nam's

25  telephone had been in contact with other telephones, the subscribers of which are ecstasy-dealing

26  suspects in San Diego and in Maricopa, Arizona. (P.A. 33:24 - 34:2)

Listing of Other Investigative Techniques with Explanations Describing Why Each Technique
Will Necessarily Fail

       The bulk of Agent Parks' affidavit is a listing of different investigative techniques which

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

can be used in drug distribution cases, together with descriptions of those techniques. He also includes a litany of drawbacks which render each of them ineffective. Virtually all the drawbacks are generic descriptions of problems which may be encountered with each technique in any investigation. Almost none of these drawbacks is discussed with relation to the particular facts of this case. Before discussing the various techniques, Agent Parks lists the aims of the investigation. These aims are common to any drug distribution investigation and are not tied to the facts of this particular case. They include: showing the existence of a conspiracy; identifying co-conspirators, aiders and abettors, sources of supply, methods of operation, location of stash houses and safe houses; location of inventory; showing how profits are divided and laundered; location of proceeds; location of forfeitable assets; and other related purposes. He concludes that without wiretap authorization, none of these goals can be achieved. (P.A. 5:18 – 7:15)

In the course of relating each of the techniques listed in the affidavit together with Agent Parks' reasons for rejecting each of them, counsel for defendant Mai intends to show that the reasons given either make no sense, are not consonant with the facts of this case, or are simply generic statements which apply in every investigation of every kind. Counsel is reluctant to mix these arguments with his recitation of the reasons set forth in the affidavit, but for the sake of clarity will include the factual arguments here. Counsel will be careful to distinguish Agent Parks' recitations of reasons from counsel's factual arguments.

Use of Cooperating Witnesses or Sources

Agent Parks first discusses use of cooperating witnesses or sources, which he rightly admits is often the most fruitful method of obtaining much or all of the information sought in drug investigations. However he asserts that he and the other investigators do not know any cooperating sources relative to Nam Nguyen. He also points out that drug trafficking organizations compartmentalize their operations, distrust new customers, and keep information from them. (P.A. 38:3 – 40:1) Agent Parks further states that "organizations of this magnitude do not allow strangers into the upper level" (P.A. 40:14)

In giving these reasons, however, Agent Parks neglects to mention that his affidavit contains no evidence that Nam Nguyen was the head of or a member of any drug trafficking organization larger than himself, much less an organization of such magnitude as to have upper,

middle, and lower levels.  Indeed there was no evidence that he ever supplied ecstasy or marijuana to anyone other than Chi Bui or Linh Nguyen (his brother) in San Diego, and no evidence that whoever supplied drugs to him was part of any organization which included Nam. More importantly, perhaps, there is no indication that Agent Parks and the other agents made any efforts to get close to Nam Nguyen or even considered ways of doing so.  Had they thought about it, they might have realized that their D.E.A. colleagues in San Diego had at least two informants who might have been utilized to make buys from Nam or get close to him or introduce to him a local cooperating witness.  Parks affidavit makes clear that the San Diego agents were using a cooperating witness to make buys from Linh and his associate, Chi Bui.  That witness obviously had their trust and could have used them to get close to Nam.  Additionally, David Bailey, who was an ecstasy dealer working with Linh and Bui, was also working as an informant for another law enforcement agency.  He might well have been arrested for his offenses and pressured into setting up Nam, or he could have been approached by his handler, D.A. Investigator Galavan.

Additionally agents could have stepped up their surveillance of Nam (discussed *infra*) to try to discover if he were selling any ecstasy locally, and could then have arrested a buyer away from Nam's house or business and put pressure on that buyer to become an informant.  For example, Agent Parks filed a D.E.A.-6 report (Bates p. 277) which discloses that on June 6, 2006 agents surveilled Nam's house, observed several people arrive in two different vehicles,  and recorded the license plate numbers on both vehicles.  An Asian male adult was observed entering Nam's house with a brown bag, but leaving without it shortly thereafter.  Perhaps the bag contained only chocolate chip cookies, but this person might well have proved a fruitful source of further investigation, had any been undertaken, and might well have been developed into an informant.

Moreover on at least one occasion (June 16, 2006: P.A. 43:24) agents followed Nam to the Thoa café on McLaughlin Ave. in San Jose.  There is no indication they went inside to see whom he might have met with, but after the September 5, 2006 wire interception order was obtained, agents learned that Nam met with his supplier, codefendant Huy Ngo, and his customer, codefendant Jimmy Nguyen, in that café on a regular basis.  Indeed, after September 5th agents followed Nam into the café on numerous occasions and observed the meetings.

(See e.g. Bates p. 304 re. meeting on Oct. 11, 2006, Bates p. 300 re. meeting on Oct. 18, 2006, Bates p. 289 re. meeting on January 18, 2007, Bates p. 281 re. meeting on Feb. 1, 2007, and Bates pages 311, 313, 315, and 317 showing additional meetings among Nam Nguyen, Jimmy Nguyen, and Huy Ngo.)  Had the agents done more surveillance at earlier hours when Nam was leaving for work prior to applying for the wire interception order, they would have observed the regular meetings among Nam, Jimmy, and Huy and drawn the obvious conclusions.  Had the agents stopped Jimmy on some traffic pretext and found him to be in possession of controlled substances, they might well have developed him as a trusted informant.  (It is interesting to note that when the agents did arrest Jimmy Nguyen on this case in September of 2007, he sang like a canary and told the agents everything he could think of regarding sales of ecstasy by Nam and by Huy.)

Use of Undercover Agents

Agent Parks affidavit rightly points out that until an cooperating source can start making buys from a suspect or otherwise get close to him, it is difficult to insert an undercover agent into the picture.  That is certainly true, but does not explain why no efforts were made to develop a cooperating witness, as discussed above.  Parks also points out that use of undercover agents is problematic since often they will have to commit crimes to maintain their cover, which is not allowed. (P.A. 40: 2-27)  This is equally true in any other case; yet when undercover officers can be utilized to make buys and be inserted into real drug rings, they often are.

Use of a Buy-Bust Operation

Agent Parks describes a buy-bust operation as one in which a cooperating witness or undercover officer will buy drugs from a suspect, after which other agents will swoop in and arrest the suspect.  This often results in the seizure of more drugs and in flipping the arrested seller so that he cooperates in identifying and arresting his source of supply.  Parks then goes on to say why it shouldn't be done, pointing out that arrested suspects may not agree to cooperate, that the arrest could compromise the investigation of other suspects, and that it can't be known in advance if the arrested suspect will have access to everyone in the organization. (P.A.40:20 – 41:24)  Not only does this statement presuppose that Nam Nguyen was actually part of a larger organization, but it is also completely generic and could apply to any drug case ever investigated.

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

1   Moreover, it is interesting to note that when the agents learned that related-case defendants Son
2   Nguyen and Duc Nguyen would be coming to Huy Ngo's house with cocaine on February 4,
3   2007, they quickly arrested both (D.E.A.-6, Bates pp. 163-165) but continued on with their
4   investigation of Nam, Huy, and Jimmy, without apparent concern that the investigation was
    going to be compromised.
5
            Physical Surveillance
6
            Agent Parks recounts 10 instances in which surveillance on Nam Nguyen was conducted
7
    between May 2006 and August 2006, which counsel for defendant Mai has earlier described in
8
    this motion.  In sum, eight of the surveillances at Nam's house appear to have been brief daytime
9
    affairs yielding no information of any consequence.  However on one occasion agents followed
10  Nam for several hours and saw him stop at the Thoa Café on McLaughlin Ave. where he later
11  met with Huy Ngo and Jimmy Nguyen on many occasions.  On that same date they also followed
12  him to Gilroy where he made an unexplained stop at a Mexican meat market and back to San
13  Jose where he went into two banks.  There is no indication the agents even tried to follow up on
14  any of these leads.  On another occasion, as described above, a person entered Nam's house with
15  a brown bag and left without it shortly afterward.  Apparently no follow-up on this incident was
    conducted either.  There is no indication that Nam was ever surveilled at his workplace or at any
    location at all for the last month prior to the inception of the wire interception order.
16
            After describing what little surveillance was done between May and September of 2006.
17
    Agent Parks proceeds to recite why surveillance will fail to help the agents reach their goals.  He
18
    points out that surveillance is likely to be discovered by the surveilled suspect and thus to
19
    compromise the investigation, though he fails to note anything about this case which would make
20  that likely.  (P.A. 46:4)  For example there is no recitation that Nam ever engaged in counter-
    surveillance driving maneuvers so as to shake off anyone who might be following him.
21
            Agent Parks concludes his discussion by saying "Additionally, to show the full extent of
22
    the perceived conspiracy (to include all the goals and objectives set forth for this investigation) of
23
    an organization the size of Nam Hoang Nguyen's network is unlikely to succeed". (P.A. 116:25)
24  This overblown and grammatically incorrect statement appears to be intended to convey the idea
25  that Nam Nguyen was the head of a large, extensive, sophisticated network of drug dealers,

26  U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
    Defendant Mai's Motion to Suppress
27

28                                          9

1    whereas the evidence shows no more than a person who sold a few boats to his brother in San

2    Diego without assistance from anyone else.  More than that however, Agent Parks' litany of

3    reasons why surveillance would not succeed is wholly unrelated to the facts of this case.  Had the

4    agents done more surveillance, or had they followed up on the promising leads they developed

5    from two of the surveillances they conducted, they might well have obtained some of the

     information they were seeking.

6        Pole Cameras

7        Agent Parks argues that based on the surveillance that was done and the nature of the

8    suburban neighborhood in which Nam's house was located, it is unlikely that the use of a pole

9    camera would have revealed useful information.  Perhaps that is true, but pole cameras are a very

10   inexpensive and man-hour-saving method of determining who may be making regular, but short

11   visits, to a particular location, and might have revealed the existence of a regular customer who

     could have been arrested and turned into an informant.

12       Tracking Devices

13       Like pole cameras, tracking devices (GPS locators) are a cheap method of determining all

14   of a suspects movements in a vehicle over a period of time.  Use of an attached GPS device

15   allows agents to determine and set up surveillances at particular locations and times that are

16   likely to be fruitful.  However Agent Parks discounts the use of such devices by stating that they

17   will not reveal who a suspect meets with or what they say.  That is certainly true in this and every

18   other case, but is hardly a reason for not using such a device to track a suspect's movements.

19   Parks also claims it would be difficult for trained and sophisticated D.E.A. agents to attach a

20   tracking device to a car in Nam's neighborhood without detection. (P.A. 50:18)  Counsel doubts

     that is true, and would certainly argue that there is no reason at all why the agents could not have

21   obtained a tracking device warrant and attached the device to Nam's car while he was at work.

         Trash Searches

22       Agent Parks' affidavit reveals that 3 trash searches of Nam's trash were done and that

23   nothing significant was found. (P.A. 51:21).  Counsel does not fault the agents for not continuing

24   to rummage through Nam's garbage, but has noted that other avenues of investigation should

25   have been pursued or continued.

26   U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
     Defendant Mai's Motion to Suppress
27

28                                             10

1

Mail Covers

2

Agent Parks discloses that on August 2, 2006 (34 days before the wire interception order

3

was granted) a mail cover was initiated on Nam's address, but that no useful information was

4

revealed.  This is not surprising, given that in 2006, virtually everyone under the age of 80

5

communicates by telephone, e-mail, or text messaging and that dope dealers do not often receive

bulk shipments of controlled substances by mail delivery to their homes.

6

Pen Register Analysis

7

Agent Parks reveals that the D.E.A. currently has a pen register operating on Nam's

8

telephone, but does not reveal any results derived from it.  Rather, he simply recites that he

9

knows there has been a great deal of telephone contact among Nam, Linh Nguyen, and Chi Bui,

but says that is not evidence of the commission of crime.  He also points out, generically, that

10

pen registers and trap-and-trace devices cannot identify specific callers (as opposed to the

11

identity of the telephones agents know are used by specific suspects) or the details of criminal

12

planning done over the telephone. (P.A. 54:8)  Agent Parks fails to note why it is that pen

13

registers are used by law enforcement in the first place, which is to establish frequent and

14

ongoing connections between known criminal suspects and other persons with whom they may

15

be conspiring or committing crimes.  Law enforcement can then identify the users of telephones

16

identified by pen registers, investigate their criminal backgrounds, and use other normal

investigative techniques to determine if they are criminally involved with the suspect whose

17

telephone is subject to the pen register.

18

In fact, though not revealed in Parks' affidavit, the pen register on Nam's telephone

19

revealed that between April 4 and April 17, 2006 there were 45 calls from Nam's telephone to

20

Linh Nguyen's telephone in San Diego, and between May 25, 2006 and July 14, 2006 there were

147 more such calls. (Affidavit of AUSA S. Jerich in support of order to maintain pen register,

21

Bates page 183, line 14)  Of much greater significance analysis of the pen register on Nam's

22

telephone and defendant Huy Ngo's telephone after the wire interception order was granted

23

shows that between October 27, 2006 and November 28, 2006, Huy called Nam 872 times and

24

called defendant Jimmy Nguyen 143 times.  From November 23, 2006 to December 10, 2006

25

Nam called Huy 159 times and Jimmy called Huy 27 times. (D.E.A. report, Bates pages 293-294)

26

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

27

28

11

Although it is true that agents learned of the roles of Huy and Jimmy as a result of the wire interception order, they clearly could have concluded that each of them was deeply involved with Nam Nguyen simply by continuing to analyze the pen register results from Nam's telephone until December of 2006. Together with the agents' observations of Nam meeting with Huy and Jimmy at the Thoa Café on McLaughlin Ave., as previously described, it would have been obvious that all three were involved in some way in Nam's unlawful activity and normal investigative techniques could then have been used to gather evidence against those two defendants as well.

In fact counsel for defendant Mai strongly suspects that the tremendous volume of calls among Nam, Huy, and Jimmy, did not suddenly begin on October 27, 2006, after the wire intercept order was obtained. Rather, it now seems clear that Huy was Nam's source of supply at all relevant times and that the volume of calls between them noted after October 27, 2006 was no doubt just as great during the months that the pen register on Nam's telephone was operating before the wire interception order was obtained on September 5, 2006.

For reasons best known to the government, Agent Parks fails to disclose in his affidavit that pen register analysis of Nam's calls prior to September 5, 2006 showed any calls at all between Nam's telephone and Huy's telephone; nor does any of the discovery supplied by the government to defense counsel reveal any local telephone numbers or the amount of calls made to such numbers from Nam's telephone number, as must have been shown by analysis of the results of the pen register placed on Nam's telephone sometime in April or May of 2006. (That discovery was requested by telephone prior to July 16, 2008 and by letter on July 21, 2008)

Starting at p. 35, line 5 of Agent Parks' affidavit, he disingenuously claims that among other reasons a wire interception order is required is that normal investigative techniques have failed and will continue to fail to show the identities of other conspirators or suppliers and the telephone numbers used by such persons. On the contrary, as strongly appears from the facts known to or easily discoverable by the agents, continued use of just two investigative tools - use of surveillance and pen register analysis of calls to and from Nam Nguyen's telephone - likely would have established the identities of co-defendants Huy Ngo and Jimmy Nguyen. Agents then could have used the same investigative tools on those two suspects.

U.S. v. Nam Nguyen, Kim Mai, et al. #CR-07-00289RMW
Defendant Mai's Motion to Suppress

12

1

Grand Jury Subpoenas

2

Agent Parks notes that the D.E.A. has subpoenaed Chi Bui's bank records, but does not

3

say what, if any, information was obtained thereby.  He then claims that agents have been unable

4

to discover where Linh Nguyen and Nam Nguyen do their banking so that a subpoena could be

5

delivered. (P.A. 55:21)  This claim seems incredible on its face, given the length of time the

6

agents had been investigating Linh and Nam.  Moreover the affidavit never explains what, if any,

7

follow-up investigation the agents did after they surveilled Nam walking into and out of two

8

different banks on June 16, 2006.  Nor would it have required very sophisticated investigative

9

techniques for the agents to have learned, as they later did learn, that Nam's wife, defendant Kim

10

Mai, who lived with him, was employed full time at the Willow Glen branch of Wells Fargo

Bank where Nam and Kim each had an account.

11

In further discussing the use of grand jury subpoenas to live witnesses, Agent Parks

12

claims that there is no guarantee that such witnesses will testify truthfully and no assurance that

13

they will not tip off the suspects.  This, of course, is true of any case, and adds little or nothing to

the argument that only a wire interception order will further the investigation.

14

Interviews of Subjects and Witnesses

15

Agent Parks makes the same obvious generic claim with respect to interviews of live

16

witnesses or subjects.  They may not tell the truth and they may tip off other subjects. (P.A. 57:4)

17

Again, this is always true in every case, but no evidence is adduced to show why that is an

especial danger in this case.

18

Use of Search Warrants

19

Finally making an assertion related to this case, Agent Parks notes that he does not know

20

where Nam and his unknown associates keep their ecstasy or whether they have already

distributed what they had. Consequently there was no evidence to be obtained by such means.

21

(P.A. 57:19)  Of course if Nam had distributed what he had and was not going to get more

22

ecstasy so he could remain in business, there would have been little point in continuing the

23

investigation.  The agents simply could have arrested him for the sale he had already made to

24

Linh.

25

Parks also asserts that if he were to execute a search warrant, all suspects would be tipped

26

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW

Defendant Mai's Motion to Suppress

27

28

13

off and no further investigation could be done.  Interestingly, three weeks after the government obtained the wire interception order, agents overheard Nam say that he had two boats of ecstasy in a jacket in his closet at home.  The agents promptly obtained a search warrant, executed it on September 29, 2006, and found the two boats in a jacket in Nam's closet. (Bates p. 306) They did not arrest him, however, and Nam promptly called Linh in San Diego and Huy in San Jose and told them what had just happened.  Linh told Nam that in all likelihood the D.E.A. was tapping his phone.  Nam said he didn't believe it and went right on talking about ecstasy deals with Huy and Linh for months thereafter, until the case was finally closed by the present indictment and the arrests of the defendants in September of 2007.  Moreover Linh himself had been arrested in March of 2006 but Parks knew he was still trying to set up ecstasy deals with Nam after that date. Thus Parks generic statement that arrests and search warrants tip off the suspects and ruin the investigation is not always the case.

The use of search warrants is the last normal investigative technique discussed by Agent Parks in his assertion that normal investigative techniques have failed and are destined to continue to fail.  He does, however, point out that prior wire interception orders were obtained on Linh Nguyen, David Bailey, and Chi Bui in San Diego, but that those taps revealed only Nam Nguyen as a source of supply to Linh and no one higher up than he. (P.A. 58:4 – 59:28)  Given the amount of effort put into the San Diego investigation, the only reasonable conclusion is that Nam was Linh's only source of supply.

In sum, Agent Parks affidavit reveals that no matter what evidence might be uncovered by normal investigative techniques - even the identities and telephone numbers of Nam's source of supply (Huy) and his principal local customer (Jimmy) -, he and the other agents were determined to get a wire interception order in any event.  The affidavit  reveals several useful leads which the agents failed to pursue, but it cavalierly and generically rejects, for reasons totally unrelated to the facts of this particular case, the use or continued use of normal investigative techniques that had proven or could have proven useful.  Additionally the affidavit continually speaks of Nam Nguyen's substantial multi-level drug trafficking organization, while in fact the agents had no evidence or reason to believe that other than having a supplier and a customer Nam had any organization at all.

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

1
2
3
4

The law restricts the use of intrusive wiretaps to a limited class of cases in which normal investigative techniques have been tried and have failed, or are destined to fail, or are too dangerous to be used.  This was not such a case, for if it were, it is not possible to conceive of any drug case in which the use of wiretaps would not be appropriate.  An examination of the law reveals these truths.

5

**STATEMENT OF LAW AND ARGUMENT:**

6
7
8

AGENT PARKS AFFIDAVIT FAILS TO SHOW NECESSITY FOR A WIRE INTERCEPTION ORDER IN THAT NO COGENT REASON IS GIVEN WHY TRADITIONAL INVESTIGATIVE TECHNIQUES COULD NOT HAVE BEEN TRIED OR, IF TRIED, BEEN CONTINUED FOR A LONGER TIME

9

A.    Necessity Requirement

10

As explained in United States v. Gonzalez, Inc. 412 F.3d 1102, 1109-1110 (9th Cir. 2005):

11
12
13

When Congress enacted the wiretapping provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522, it intended to "make doubly sure that the statutory authority [for wiretaps] be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications". [citation] .... To enforce the privacy-centered purposes of these provisions, Congress created important statutory prerequi- sites for obtaining wiretap orders, including the requirement that the government must prove necessity before it may utilize the unconventional method of wiretaps as an investigative tool.

14
15
16
17
18
19
20
21
22
23
24
25

Proof of "necessity" means the government must establish that "traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try" United States v. Gonzalez, Inc. (*ibid.*), summarizing 18 U.S.C. §2518(1)© and (3)©), United States v. Blackmon 273 F.3d 1204, 1207 (9th Cir. 2001)  The Ninth Circuit "has interpreted these necessity provisions to require "a full and complete statement of specific allegations" establishing the necessity of the wiretap sought". (U.S. v. Gonzalez, Inc., citing United States v. Ippolito 774 F.2d 1482, 1486 (9th Cir. 1985))  Generalized averments about why normal investigative techniques are unlikely to succeed are not sufficient to establish necessity for a wiretap.  United States v. Blackmon 273 F.3d at 1210.  Although the Appellate Court employs a "common sense approach" in reviewing the reasonableness of the government's good faith efforts to use traditional investigative tactics before claiming necessity for a wiretap order, it will not uphold a wiretap order where the government has conducted only a cursory investigation before applying for the order. (U.S. v. Gonzalez, Inc. 412 F.3d at 1112-13)

26
27

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

28

B.    Standing

The wiretap statutes clearly provide that any person aggrieved by the use of a wiretap (whether that person is the user of the target telephone or merely someone who calls the target telephone) has standing to move to suppress the contents of intercepted wire communications to which he or she is a party, together with other evidence derived from that interception. (18 U.S.C. §2518(10)(a),(11))  In this motion defendant KIM MAI moves to suppress the contents of the intercepted call made by her to defendant Nam Nguyen, the user of target telephone #1 (408-314-6063), which conversation constitutes the basis of the telephone count charged against her. Unquestionably she has standing to do so.

C.    Insufficiency of the Government's Showing in this Case

Defendant MAI has previously set forth at great length the government's listing of many traditional investigative techniques used in drug distribution cases, together with its description of the limited extent to which they employed some of these techniques to investigate defendant Nam Nguyen, and she has recounted the government's generic and non-specific reasons why those techniques were not further pursued and why most of the other techniques were never tried at all.  Defendant seeks here to highlight some of the more promising avenues of investigation that were insufficiently pursued or were not tried.

Use of Informants

As previously noted, even agent Parks concedes that use of informants is among the most productive avenues of investigation and gathering of information.  In summary fashion he dismisses the idea of using informants to gather more information on Nam Nguyen claiming that he knows of no informants he can use against Nguyen and stating that it is extremely difficult to find informants who can penetrate into the upper layers of a criminal drug distribution organization like that of Nam Nguyen.  Counsel for defendant Mai has already noted that there is not a scintilla of evidence that Nam was the head of any organization larger than himself.  He has also pointed out that the government had available to it an informant who had already gained the confidence of Nam's brother Linh in San Diego as well as a confederate of Linh (David Bailey) who was already working as an informant for another agency (Riverside County District Attorney's office) and who had already voluntarily informed on Linh and his supplier in San Jose

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

16

(Nam Nguyen).  It is of course not known if either of these two informants could have been introduced to Nam or if the government could have arrested one of Nam's customers (e.g., Jimmy Nguyen) and developed one of them into an informant.  No one knows because the government never took a single step to try.  They simply performed some desultory surveillance, used a promising pen register (but only accounted for Nam's calls to his brother and did not count or analyze any local calls he made), and checked his trash three times.

In U.S. v. Blackmon, *supra*, 273 F.3d 1204, the government likewise had used informants against other suspects who were dealing drugs in a very large housing project in Los Angeles where defendant Blackmon was also operating.  The agents in that case concluded, however, that use of the same or other informants against Blackmon would be fruitless.  Characterizing the government's claim, the Court said (273 F.3d 1210):

> In discussing informants, the affidavit states that despite the successful employment of four informants during the Miller [one of the other suspects] pre-wiretap investigation, these informants are insufficient to meet the broad investigative purpose here because they "typically only possess limited knowledge concerning the scope of the criminal enterprise".  The affidavit further states that subjects like Blackmon "know that it is [in] their best interest to reveal as little as possible to others concerning how their business is conducted...Therefore, without the evidence sought by the application, cooperating source information is insufficient to identify the entire criminal enterprise".

These generic claims about why it is fruitless to try to introduce an informant to a suspect and why an informant cannot uncover the critical information the agents need to crack the drug ring sound suspiciously like the assertions in the present case.  The Court, however, made short shrift of the government's arguments, noting (273 F.3d 1210):

> These statements would be true of most or all drug conspiracy investigations, and the limitations on the usefulness of informants, no matter how successful or potentially successful to the particular operation, would [invariably] support the necessity of a wiretap.

Continued Use of Pen Registers

As in the present case, the Blackmon affidavit also summarily rejected the continued use of pen registers, claiming these "records only provide evidence that the telephone was used, without showing the identity of the callers or the nature or purpose of those communications".  Again the Court rejected the government's arguments, saying (273 F.3d 1210)

> But this is nothing more than a description of the inherent limitations of these devices. A full and complete statement of necessity must specify why, in the particular case at hand, these

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

1   inherent limitations will be insufficient.

2   In the present case, not only did the Nam Nguyen "necessity" affidavit in this case not spell out

3   why pen register analysis could not provide sufficient information, it also failed to include any

4   compilation or analysis of local calls made by Nam Nguyen from the onset of the investigation

5   on him (roughly April, 2006) until after the wire interception order had been obtained in

September, 2006.

6   Surveillance

7       Defendant Mai has previously pointed out that the government conducted a total of 10

8   surveillances of unknown duration at Nam Nguyen's family home over at 3 month period (and

9   no surveillances during the last month prior to the wiretap application).  Two of these

10  surveillances could have led to useful information had the agents only followed up on them

11  (agents followed Nam to a private residence and saw him switch vehicles there, obtained license

12  number on the vehicle, followed him to an apparent meeting at a meat market in Gilroy, followed

13  him to the Thoa Café where, after the wiretap was obtained, they observed Nam meeting with his

14  supplier, Huy Ngo and his customer, Jimmy Nguyen on numerous occasions).  No surveillance

15  was done at Nam's place of business, though the agents at all times knew where he worked.  Nor

did the agents attempt to learn if Nam had accounts at either of the two banks where they

observed him to enter, or what business he might have been pursuing at those banks.

16       In United States v. Blackmon, *supra.* and United States v. Gonzalez, Inc., *supra* the Ninth

17  Circuit rejected government arguments that its perfunctory surveillance of suspect Blackmon and

18  the corporate office of Gonzalez, Inc. had been sufficient to justify the necessity finding the

19  government sought.  It also summarily rejected the government's claim that a single instance of a

20  failed surveillance in each case could suffice to justify a showing that surveillance could not

21  succeed in revealing useful information or would compromise the investigation.  In this case the

22  government made no showing at all of any failed surveillances or surveillances that might have

23  been detected by Nam Nguyen, and no showing why further or longer surveillances of Nam's

person or surveillances of Nam's place of business could not have succeeded.

24  Use of Grand Jury Subpoenas

25       As noted above the government affidavit summarily rejected the idea of using grand jury

26  U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW

27  Defendant Mai's Motion to Suppress

28                             18

subpoenas to obtain Nam Nguyen's bank records or for any other purpose. Their purported reason for not going after the bank accounts was that after more than a year of investigation of Linh Nguyen in San Diego and at least 5 months of investigation of Nam Nguyen in San Jose, the agents had no idea where either of them did their banking. As noted before, agents followed Nam Nguyen into two different banks during one surveillance in June, 2006, but apparently made no efforts to confirm that he had an account at either one. Nor did the agents learn that Nam's wife, defendant Kim Mai, worked at a Wells Fargo bank branch in Willow Glen, where both maintained accounts, though they soon learned that fact after obtaining the wiretap order. The government's only other reason for not using this often-fruitful and productive investigation technique was that issuing subpoenas to witness could not guarantee truthful testimony or that subpoenaed witnesses would tip off the suspects.

In United States v. Gonzalez, Inc., *supra* (412 F.3d at 1114), the Ninth Circuit summarily rejected a similar argument, saying:

> the affidavit's terse rejection of the possible productive use of grand jury subpoenas or search warrants does not establish that these investigative techniques were reasonably unlikely to work. The affidavit rejects these tools by claiming they would likely reveal the investigation to the targets. Such statements do not reasonably explain why traditional investigative tools are unlikely to succeed in a particular investigation, but are "boilerplate conclusions that merely describe inherent limitations of normal investigative procedures," which we have found insufficient to establish necessity. [citing U.S. v. Blackmon, *supra*]

Moreover, as previously noted, in the overall course of the investigation, Linh Nguyen was arrested in March, 2006, for selling ecstasy to an undercover agent; Nam's house was searched with a warrant in September, 2006, and two boats of ecstasy were seized, after which he was advised that the D.E.A. was probably tapping his telephone; and suspects Son Nguyen and Duc Nguyen were arrested as they approached Huy Ngo's front door with cocaine for sale in February, 2007. None of these events appear to have hindered the government's ongoing investigation in any way.

Reliance on San Diego Affidavits to Cover Deficiencies in Proof of Necessity re. Nam Nguyen

In seeking to uphold the Nam Nguyen wiretap order the government may not rely upon the fact that necessity may have been shown sufficient to uphold the wire interception orders on the various San Diego County suspects and their telephones. Rather, a separate and independent

1    showing of diligence and necessity must be demonstrated to support the granting of an

2    interception order on Nam Nguyen's telephone. In United States v. Gonzalez, Inc. 412 F.3d 1102

3    (9th Cir. 2004) the Ninth Circuit upheld the District Court's order suppressing evidence obtained

4    from a wire interception order on telephones located at a bus company's corporate offices in Los

5    Angeles. The bus company and its officers were charged with alien smuggling and related

6    offenses. The government had obtained wire interception orders on telephones at the company's

7    main terminals in Phoenix and Tucson, Arizona after doing a very extensive investigation of the

8    company's operations in that state. The government also learned that some of the company's

9    senior officers directed the company's activities from an office on Blake Avenue in Los Angeles.

10   After conducting a very perfunctory investigation of that office, briefly surveilling it and using

     pen registers on telephones located therein, the government applied for and obtained a wire

11   interception order on those telephones.

12           The Ninth Circuit upheld the District Court's order suppressing evidence obtained as a

13   result of that order, holding that despite the extensive investigation done in Arizona and the

14   showing of necessity that had justified the wire interception orders on the two Arizona terminals,

     a separate and independent showing of necessity had to be made to justify a similar order for the

15   Los Angeles office. The Court held (412 F.3d at 1115):

16           To cover its failure to establish necessity for the Blake Avenue wiretap the [government]
     affidavit attempted to shoe-horn the significant investigatory work the government conducted
17   before applying for the Terminal wiretap into its application for the Blake Avenue wiretap.
     But the government is not free to transfer a statutory showing of necessity from one applica-
18   tion to another - even within the same investigation. This court has held that an issuing judge
     may not examine various wiretap applications together when deciding whether a new appli-
19   cation meets the statutory necessity requirement. Each wiretap application must separately
     satisfy the necessity requirement. [citing United States v. Carneiro 861 F.2d 1171, at 1180-81
     (9th Cir. 1988)]

20   Whether or not this Court believes there was a sufficient showing of necessity to uphold any or

21   all of the San Diego wiretaps is thus not dispositive of the issue now before it. Rather, the

22   question is only whether a sufficient showing of necessity has been made as to the wiretap on

23   Nam Nguyen's telephone in September, 2006. No such showing has been made.

     **CONCLUSION:**

24           The government's perfunctory investigation of Nam Nguyen after April, 2006 and its

25

26   U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
     Defendant Mai's Motion to Suppress
27

28                                          20

almost wholly generic and boilerplate affidavit claiming that no traditional investigative

technique was likely to work is entirely insufficient to uphold the wire interception order that it

obtained on September 5, 2006. As eloquently put by the Ninth Circuit in <u>United States v.</u>

<u>Blackmon</u> (273 F.3d at 1211):

> As stated above, the government must strictly adhere to the requirements of §2518.
> That pen registers do not reveal the identity of callers; that drug dealers know it is in
> their best interest to reveal as little as possible; that witnesses cannot lead to the prosecution
> of an entire drug organization; and that traditional investigative methods do not reveal
> all are generic problems of police investigation. Their generic nature does not dissipate
> simply because the government claims a vast investigative purpose. Wiretaps themselves
> could little achieve the investigative goals stated in the government's application. The
> government may not cast its investigative net so far and so wide as to manufacture necessity
> in all circumstances. Doing so would render the requirements of §2518 nullities.

In this case the government asserted the usual vast investigative purpose of bringing down

the vast and nefarious Nam Nguyen drug trafficking organization, yet it provided no evidence

that Nam Nguyen's "organization" consisted of anyone other than himself. They conducted a

few surveillances and failed to follow up on useful leads obtained thereby; they used pen

registers but only analyzed data that they already knew - that Nam was calling his brother Linh

and Chi Bui in San Diego; they made no attempts to utilize the informants they already had or to

develop new ones; they made no attempts to locate Nam's bank accounts or to obtain his bank

records by way of grand jury subpoenas. They asserted a vast investigative purpose and claimed

that traditional investigative techniques would not accomplish that purpose, making almost no

reference to the facts of this case.

If this affidavit constitutes a showing of necessity, then the requirements of section 2518

are indeed nullities. The evidence obtained as a result of the September 5, 2006 wire interception

order, and in particular, the September 23, 2006 call to Nam Nguyen by his wife, defendant Kim

Mai, must be suppressed.

Dated: July 31, 2008
At San Jose, CA.

Respectfully submitted,

_____
GEOFFREY A. BRAUN
Attorney for Defendant, KIM MAI

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

21

PROOF OF SERVICE BY ELECTRONIC MEANS

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

UNITED STATES v. NAM NGUYEN, KIM MAI, et al.  #CR-07-00289 RMW

I, Geoffrey A. Braun, Attorney for Defendant Kim Mai, do hereby declare under penalty of perjury:

On July 31, 2008 I served the within Notice of Motion to Suppress Evidence and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence upon the Attorney for the Government and the respective attorneys for the co-defendants and related defendants by electronically filing the same with the ECF / PACER electronic filing system in use by the above entitled Court.

The attorneys to be served electronically are as follows:

Susan Jerich, AUSA
Federal Bldg., 9th Fl.
450 Golden Gate Ave., Box 36055
San Francisco, CA. 94102

David Johnson, Esq.
900 Lafayette St. #650
Santa Clara, CA. 95050

Robert Carey, Jr., Esq.
P.O. Box 1040
Palo Alto, CA. 94302

Jack Gordon
95 S. Market St. #300
San Jose, CA. 95113

Alfredo Morales, Esq.
2 N. 2d St.#250
San Jose, CA. 95113

Vicki Young, Esq.
706 Cowper St. #202
Palo Alto, CA. 94302

_____

Dated: July 31, 2008
At San Jose, CA.

_____
GEOFFREY A. BRAUN
Attorney for Defendant, KIM MAI

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. v. Nam Nguyen, Kim Mai, et al.  #CR-07-00289RMW
Defendant Mai's Motion to Suppress