```
GEOFFREY A. BRAUN
Bar #46562
181 Devine St.
San Jose, CA 95110
(408) 288-9512

Attorney for Defendant
Kim Mai
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 07-00289 RMW |
| Plaintiff, | ) DEFENDANT KIM MAI'S RESPONSE |
| vs. | ) TO GOVERNMENT'S OPPOSITION ) TO HER MOTION TO SUPPRESS |
| NAM NGUYEN, KIM MAI, et al., | ) EVIDENCE GAINED FROM WIRE ) INTERCEPTION ORDER |
| Defendants. | ) |

I.   DEFENDANT MAI HAS STANDING TO BRING A MOTION TO SUPPRESS

The Government appears to concede, as it must, that a person who makes a telephone call to a telephone that is the subject of a wire interception order has standing to make a motion to suppress the contents of that call. Strangely, however, they claim that the fact that defendant MAI made such a call is a "disputed factual issue" (Opposition 5:10) and that consequently she must personally file an affidavit swearing that she did make the call that she now moves to suppress. It comes as a surprise to defendant that the Government, having alleged in Count III of the Indictment that defendant MAI made the call, and the defendant, having alleged throughout her moving papers that she made the call (Notice of Motion 1:21; Memo of Points and Authorities 2:20, 16:2, 21:18) now characterizes the question of whether she made the call as a "disputed factual issue" which must be asserted in an affidavit. Rather, it seems that the government is simply generating work for itself, the defense attorney, and the Court to no useful end but to further the reputation of lawyers as wasteful paper producers.

Nevertheless, counsel submits herewith an affidavit executed by defendant MAI averring that she made the telephone call she now seeks to suppress.

United States v. Kim Mai, et al. #CR-07-00289 RMW
Defendant Mai's Response to Gov't Opposition

II.    AGENT PARKS' AFFIDAVIT FAILS TO SHOW NECESSITY FOR THE WIRE WIRE INTERCEPTION ORDER OF SEPTEMBER 5, 2006

The Government's argument that Agent Parks' affidavit demonstrates necessity for the wire interception order suffers from the same deficiencies in analysis as the affidavit itself. It assumes, for instance, without any showing in the facts set forth in the affidavit, that suspect (and defendant) Nam Nguyen, for whom probable cause existed to believe that he had supplied MDMA to his brother Linh Nguyen and his brother's associate, Chi Bui, in San Diego on two or three occasions at most, was the kingpin of a multi-layered drug trafficking organization operating in Santa Clara County, such that no amount of ordinary investigation could ever uncover all its members and participants and achieve all the other investigative goals listed in the affidavit and repeated in footnote 1 (p. 10) of the Government's Opposition. The weakness of the government's argument is, perhaps, best illustrated by its comparison of Nam Nguyen's one-man "drug-trafficking organization" to the Mexican Mafia, a notorious statewide prison gang with hundreds, if not thousands, of members in every prison in the State of California and in many local communities as well. (See Government's Opposition 14: 1-9)  In fact, in 67 pages worth of affidavit, the government could not set forth a single reason to believe that Nam Nguyen was the head of or a member of any kind of "organization" larger than himself.

The Government makes a factual error and an omission in its Opposition. It asserts on p. 13 at line 18 and on p. 22 at line 6 that the government did not have evidence that Nam Nguyen was the source of MDMA delivered to Linh Nguyen and Chi Bui in San Diego until May 18, 2006, but in fact the San Diego D.E.A. agents had good reason to know that fact as early as December 2, 2005 when they intercepted a call from him to Chi Bui. (Affidavit p.8, ¶12)  The government also asserts (Opposition 16:11) that it does not appear in Agent Parks' affidavit that during a June, 2006 surveillance of Nam's house an Asian male individual (whose license number was recorded) was observed to enter Nam's house with a brown bag and leave without it. The government is correct. For reasons best known to himself, Agent Parks omitted that fact from his affidavit, but it is disclosed in a DEA-6 form dated June 7, 2006 signed by him. (Defendant Mai will attach a copy of that 1- page report to the courtesy copy of the Response to be delivered to the Court.)

The government argues, as did the affiant, that various normal investigative techniques would have proved fruitless. Without repeating her own arguments at length, defendant responds

to these objections as follows:

Use of Cooperating Sources:

Contrary to the government's assertion, Agent Parks' affidavit does not assert that they ever looked for cooperating sources or tried to develop any. Nor does the affidavit assert that they considered using the San Diego sources but rejected them for some specific reason. Agent Parks merely recites that the government does not know of any cooperating sources to use against Nam Nguyen and leaves it at that. (Aff. p.38, ¶ 58)

Use of a "Buy-Bust" Operation

Echoing Agent Parks' Affidavit, the government maintains, without reference to the facts of this case, that arrested suspects may refuse to cooperate and will then compromise the investigation. This fear of a compromised investigation did not deter the agents in the slightest when they learned that Nam Nguyen himself had MDMA in his closet. They immediately procured a search warrant and searched his house. Nor did such a fear deter the agents from arresting Linh Nguyen in San Diego after he sold ecstasy to an undercover agent. The government specifically argues (Opposition 15:5) "There was no assurance that arresting any known members of the organization in this case would have resulted in identification of all members of the organization". In the first place no reported case requires "assurance" that any one attempted investigative technique will succeed, much less succeed at achieving such a grandiose goal as identifying all members of a drug trafficking organization (assuming there is one). Normal investigation is a step-by-step process which eventually leads to the achievement of various investigative goals. The government's argument here is weightless.

Surveillance

The government fails to respond to defendant Mai's argument that at least two of the surveillances uncovered leads which might have proven extremely productive, had the agents truly been interested in learning what Nam Nguyen was doing, as opposed to simply generating a claim that normal investigative techniques were not going to lay bare the inner workings of his many-layered drug trafficking organization. As previously noted, they failed to try to determine whom he met at the Thoa Café or why he had a meeting, or to try to learn why he had gone to someone's house and switched cars (or whose house and car was involved), or to learn why he traveled from San Jose to Gilroy to go to a meat market, given the plethora of meat markets available in San Jose, or why he had then gone into two banks or whether he maintained accounts

United States v. Kim Mai, et al. #CR-07-00289 RMW
Defendant Mai's Response to Gov't Opposition       3

in either one. They argue that there would be no purpose in following up on an observation of a meeting between Nam and other possible conspirators because "merely observing a person or persons together does not produce evidence beyond a reasonable doubt of a criminal narcotics conspiracy." (Oppostion 16:22) Well, of course it doesn't. That is why investigators who wish to learn things, as opposed to those who merely intend to file necessity affidavits, conduct step-by-step follow-up investigation. One might be led to wonder what the purpose of surveillance might be, if no one follows up on leads that are discovered as a result.

The government specifically argues that nowhere in Agent Parks' affidavit is it stated that during one of the surveillances agents noted an Asian male adult enter Nam Nguyen's house with a brown bag and leave without it. (Opposition 10:16) They are correct in that Agent Parks, for reasons best known to himself, chose to omit that fact. However the incident did occur during the surveillance on June 6, 2006, as revealed in Agent Parks' DEA-6 generated on June 7, 2006 (Bates p. 277) a copy of which is attached hereto (or to the courtesy copy which will be delivered to the Court) and incorporated by reference. Agents made no attempt to learn who this individual was, though the DEA-6 form shows they obtained a description and license plate number on his vehicle. Once again one might wonder why the surveillance was conducted at all.

Tracking Device

The government's argument (Opposition 17:20) fails to respond to defendant Mai's point that there was no reason why in the course of a 4-month (or longer) investigation the agents could not have applied for a tracking device warrant and placed such a device on Nam's vehicle. This is especially true if, as Agent Parks alleges, they believed Nam did not have the drugs in his house and were worried that he might detect a surveillance.

Pen Register, Trap-and-Trace, Telephone Analysis

Defendant Mai argued in her opening memorandum that the government placed a pen register and trap-and-trace device on Nam's telephone, not because they were truly interested in investigating any leads which might be developed, but only so they could say they tried another technique but did not learn anything from it. She pointed out that she had requested discovery of the records generated by the pen register and trap-and-trace devices. The government appropriately responded to the request and has produced the records, which are attached hereto and incorporated by reference (i.e., attached to the courtesy copy of this Response which will be delivered to the Court). Those records reveal that during the period covered from the inception

of the pen register and trap-and-trace (May 22, 2006) to the filing of the necessity affidavit (September 5, 2006), a period of 3 ½ months, Nam and the person eventually discovered to be his supplier, co-defendant Huy Ngo, called each other a total of 192 times, and that during the same time frame Nam and co-defendant Jimmy Nguyen called each other a total of 231 times. These facts do not appear in the affidavit or in any DEA report, which leads one to believe that no one even bothered to analyze or follow up on all these local calls to discover who the users of these telephones were or what business they might have had with Nam Nguyen. Rather, it appears that these devices were installed simply so that the government could say it did so in support of its intended necessity affidavit.

CONCLUSION:

Nothing in the government's opposition explains why, in relation to the facts of this case, no serious efforts were ever made to follow up on any investigative leads or to learn anything about who Nam Nguyen was dealing with. The government's opposition simply amounts to a claim that they are not required to make any serious effort to investigate their hypotheses, but may merely assert some grand investigative purpose and automatically be entitled to the issuance of a wiretap order. That is not the law in this or any other Circuit, nor should it be if wiretaps are not to be routinely issued every time the government asks for one.

Dated: August 19, 2008
At San Jose, CA.

_____
GEOFFREY A. BRAUN
Attorney for Defendant, KIM MAI

**GEOFFREY A. BRAUN**
Bar #46562
181 Devine St.
San Jose, CA 95110
(408) 288-9512

Attorney for Defendant
Kim Mai

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 07-00289 RMW |
| Plaintiff, | ) DECLARATION OF KIM MAI IN ) SUPPORT OF MOTION TO |
| vs. | ) SUPPRESS EVIDENCE GAINED ) FROM WIRE INTERCEPTION |
| NAM NGUYEN, KIM MAI, et al., | ) ORDER |
| Defendants. | ) |

    I, Kim Mai, one of the defendants herein do hereby declare:

    On September 23, 2006 I made a telephone call to my husband Nam Nguyen at 408-314-6063 in which I asked him about a price for chocolates. At the time I did not know that Nam's telephone was subject to a wire interception order or that my call to him was being recorded. I expected that the call was a private conversation between me and my husband, Nam Nguyen. It is the contents of this telephone call that I am moving to suppress in the motion to which this declaration is attached.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2008
At San Jose, CA.

*Kim Mai*
_____
KIM MAI, Defendant

United States v. Kim Mai, et al. #CR-07-00289 RMW
Defendant Mai's Response to Gov't Opposition     6

1 | PROOF OF SERVICE BY ELECTRONIC MEANS

2

3 | UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

4 | UNITED STATES v. NAM NGUYEN, KIM MAI, et al.  #CR-07-00289 RMW

5 |     I, Geoffrey A. Braun, Attorney for Defendant Kim Mai, do hereby declare under penalty of perjury:

6

7 |     On August 19, 2008 I served the within Response to Government's Opposition to Motion to Suppress Evidence and Declaration of Kim Mai upon the Attorney for the Government and the respective attorneys for the co-defendants and related defendants by electronically filing

8 | the same with the ECF / PACER electronic filing system in use by the above entitled Court.

9 |     The attorneys to be served electronically are as follows:

10 | Susan Jerich, AUSA           David Johnson, Esq.          Robert Carey, Jr., Esq.
Federal Bldg., 9th Fl.           900 Lafayette St. #650       P.O. Box 1040
11 | 450 Golden Gate Ave., Box 36055   Santa Clara, CA. 95050       Palo Alto, CA. 94302
San Francisco, CA. 94102

12

Jack Gordon                  Alfredo Morales, Esq.        Vicki Young, Esq.
13 | 95 S. Market St. #300        2 N. 2d St.#250              706 Cowper St. #202
San Jose, CA. 95113          San Jose, CA. 95113          Palo Alto, CA. 94302

14

15 | _____

Dated: July 31, 2008
16 | At San Jose, CA.

17

18 |                                          _____
                                             GEOFFREY A. BRAUN
                                             Attorney for Defendant, KIM MAI
19

20

21

22

23

24

25

26

27

28 | United States v. Kim Mai, et al.  #CR-07-00289 RMW
Defendant Mai's Response to Gov't Opposition        7